UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                                          CASE NO. 8:22-cr-168-MSS-SPF

DAVID JACOB MITCHELL

**UNITED STATES' SENTENCING MEMORANDUM**

The United States files this sentencing memorandum to request that this Court sentence the defendant to the guideline term of 960 months' imprisonment. In support thereof, the United States submits as follows:

**I.   Background**

On June 8, 2022, a grand jury returned a four-count Superseding Indictment that charged the defendant, David Mitchell ("Mitchell"), with one count of production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e), one count of distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1), one count of sending obscene material to a minor, in violation of 18 U.S.C. § 1470, and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). Doc. 33. On October 18, 2022, the defendant pleaded guilty to the Superseding Indictment and on November 23, 2022, his plea was accepted by the court.  The Court scheduled a sentencing hearing for January 18, 2023. Doc. 53-58.

## II. Presentence Investigation Report

On January 6, 2023, U.S. Probation issued its Presentence Investigation Report ("PSR"). Doc. 65. It determined the defendant's applicable guidelines range for the underlying offenses as 960 months. PSR ¶ 114. Probation reached this calculation based on a total offense level of 43 and a criminal history category of I. The guideline imprisonment range is life. As the statutorily authorized maximum sentences are less than the minimum of the applicable guideline range, the guideline term of imprisonment is 960 months. U.S.S.G. ¶ 5G1.2(b). PSR ¶ 114. The defendant's conduct, taken with the sentencing factors set forth in 18 U.S.C. § 3553(a), demands this sentence as poses an extraordinary danger to children in the community and that danger is unlikely to abate over time.

## III. Argument for a Guideline Sentence

The Supreme Court has declared, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United Sates*, 522 U.S. 38, 41 (2007). Although a sentencing court may not presume that a guideline-range sentence is reasonable, the Sentencing Guidelines remain a significant and pivotal component of the sentencing process. The Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009). Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and

circumstances of the offense, as well as the history and characteristics of the defendant. Additional factors outlined in § 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other corrective treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). The defendant's conduct, considered in conjunction with the sentencing factors set forth, calls for a high-end guide-line sentence.

### A. Nature and Circumstances of the Offense

The nature and circumstances of this defendant's offense conduct exhibits the egregious exploitation of those who could not defend themselves: children. For years, this defendant traded images and videos of children being sexually abused. He engaged in online conversations about the horrific abuse and encouraged the sexual abuse of minors his own gratification.

Federal agents began investigating Mitchell after Mitchell engaged in an online conversation with an undercover agent (UC) in Mississippi. The UC was posing as a 13-year-old female over the social media application, Kik. Throughout their conversation, Mitchell sent the UC multiple videos of children being sexually abused, as well as multiple videos and images of himself masturbating. Mitchell engaged in graphic sexual conversations, attempting to entice the fictious minor into engaging in

sexual acts. PSR ¶ 10-16. On October 20, 2021, for instance, the following chat occurred:

| | |
|---|---|
| Mitchell: | [sent video of child sexual abuse] |
| UC: | wowzers she is |
| Mitchell: | you like |
| UC: | yea |
| Mitchell: | I'd love to do this to you |
| UC: | prove it |
| | Zomg |
| Mitchell: | I really hope ur fr |
| UC: | uh ya I am dang that's nice |
| Mitchell: | our age diff might make me bust so hard and fast the first time we start messing around |
| | I'd love to cum in you and then eat it all out of you |
| | Are you gonna let me make vids of us |

In Mitchell's efforts to entice the fictious minor into creating new sexual videos, Mitchell sent the UC a video he claimed to be of a 15-year-old female that he knew. PSR ¶ 14. Mitchell sent specific requests to the UC for videos. On October 25, 2021, Mitchell again asked, "Can we make our own cp vids". He also sent videos of himself masturbating. For example, on November 23, 2021, after sending a video of himself masturbating, the following conversation occurred:

| | |
|---|---|
| Mitchell: | can I send you a Christmas present? |
| UC: | can't miss what I never had |
| Mitchell: | cuz you don't text me or say anything |
| UC: | cuz I know what I want you don't |
| Mitchell: | I know what I want |
| | Do you think I'm naughty for wanting to fuck a girl your age |
| UC: | u gonna keep askin the same questions over and over |
| | People want what people want |

4

| | |
|---|---|
| Mitchell: | just making sure |

Mitchell's predatory behavior demonstrates his danger to the community, as he was attempting to groom the UC into creating sexual abuse videos, by sending images and videos of children being abused to the UC and demonstrating other juveniles were engaging in sexual acts for his pleasure. Mitchell also engaged the UC in conversations indicating his desire to meet the UC and engage in sexual acts; he inquired if she was on birth control, the size of her breasts, and stated he wanted to travel to Mississippi and make videos with her performing sexual acts with him. PSR ¶ 15.

Mitchell abhorrent conduct persisted with not just a fictitious minor, but unfortunately, with real minors as well. Mitchell enticed and coerced Victim 1 into producing videos depicting sexual abuse. PSR ¶ 18-20. Mitchell had this minor call him "daddy" and suggested the minor engage in prostitution for his financial benefit. On October 3, 2017, the following conversation occurred:

| | |
|---|---|
| Mitchell: | we could make him pay us to eat ur pussy and I jerk him off |
| Victim 1: | who? |
| Mitchell: | that guy |
| Victim 1: | oh hehe |
| Mitchell: | mmhmm |
| | make other guys pay if they want to fuck my little |
| Victim 1: | okay daddy |
| Mitchell: | but I own you |

Mitchell further expressed violent, predatory behavior, telling the minor, "I wish I could fucking smack u right now" "across ur face" and "I decide what goes I ur pussy." Mitchell expressed his desire to run away with this minor and acknowledged

5

that if they were caught, "I'll go to jail." Mitchell also expressed his desire for the minor to "kill me if we get caught" "so I don't go to jail forever." Mitchell continued his predatory, possessive behavior, stating "I want you to write something on ur leg and show me." Mitchell directed the minor to write "property of Tyler" on her leg in marker and "cum slut" on her other leg (Tyler being his fictitious name provided to this minor). After the minor provided proof of this, Mitchell responded, "good girl." This behavior led to the minor producing sexual images for Mitchell's gratification. On October 4, 2017, Mitchell stated "show me that pussy since I didn't get to see last night." The victim then sent an image of her vagina. Mitchell responded, "let me see ur pussy with a ur bottle in it" and she sent an image sticking a water bottle into her vagina. Mitchell responded to the picture, stating "show me that bush baby", "like the hair on ur pussy", "above the bottle", and the victims ent another image of a water bottle in her vagina, from a different angle. Mitchell also stated, "its illegal for me to see ur pussy baby." PSR ¶ 20.

Mitchell's behavior clearly didn't change from his abuse of victim 1 in 2017 to the similar conversation he engaged in with the UC in 2021. This fact confirms that Mitchell poses a grave danger to children in the community that is unlikely to abate over time. The UC and Victim 1 were not the only minors that Mitchell engaged in online conversations discussing sexual abuse. Within Mitchell's cellular phone, federal agents also discovered a conversation between Mitchell and Victim 2, between September 2017 and January 2018, where this minor sent images exposing her genitals and they discussed having sexual relations. Specifically, Mitchell stated, "I want fuck

6

before ur legal." When making arrangements to meet this minor, Mitchell asked, "what about ur parents" and 'can I keep ur panties to take back with me?" Investigation revealed this juvenile was 17 years old at the time of these conversations.

The seriousness and duration of the defendant's offense conduct demonstrates the necessity for a guidelines sentence. The defendant's collection of child sexual abuse images and videos included prepubescent minors and violent, forceful conduct. Distribution and possession of child pornography are also not victimless crimes. Each child depicted in those videos and images are real people – a victim who has to live with the sexual abuse they endured that was documented and put on the internet to live in perpetuity. Mitchell shared those images and videos of child sexual abuse while simultaneously perpetuating the abuse of children through the creation and distribution of child sex abuse videos he produced.

The defendant did not suffer from a solitary lapse in judgment. His conduct was calculated and premeditated. Although this Court must consider other factors beyond the defendant's offense conduct, this Court should nonetheless give significant weight to his offense conduct in crafting his sentence here. *See, e.g.*, *United States v. Croteau*, 819 F.3d 1293, 1309 (11th Cir. 2016) ("The weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court.").

B. **History and characteristics of the defendant**

Mitchell's history and characteristics also weigh strongly in favor of a guidelines sentence and does not support any downward variance. Mitchell's criminal history, while a category I, is notable for its inclusion of battery charges, further demonstrating

his predatory nature. In 2017, Mitchell pled guilty to a battery charge and violated the terms of his probation. While charges were not filed for additional battery charges, in 2012, Mitchell was arrested for domestic battery by strangulation, and in 2013, a domestic battery.

Mitchell described his childhood as being "well provided for, specifying that he never lacked food or clothing." PSR ¶ 81. While the defendant described his mother as an alcoholic, he stated their relationship was "not horrible" and he stated he had a "good relationship" with his father, stating his father was a "good person who always tried to help people." PSR ¶ 81-84. Mitchell further noted that he has "good relationships with his siblings" and that they "remain supportive of him" despite these charges. PSR ¶ 85. Mitchell suffered from depression, previous suicide attempts, and drug addictions. PSR ¶ 91-98. Any mitigating effect these facts may have had, however, is outweighed, by the nature and circumstances of these offenses.

The defendant was also evaluated by R. Drake Counseling, Inc. for a psychosexual evaluation. *See evaluation*, PSR, pg. 27-37. Of note, when the defendant reported the background of this case, he discussed his conversation with the UC, but neglected to mention he also spoke with real minors, one of whom produced child pornography. This report included that Mitchell "is at a moderate to high risk for sexual offending and at a high risk for criminal offending" and, not surprisingly, met the criteria for pedophilic disorder. A guideline sentence of 960 months is necessary to protect the community.

### C. Seriousness of the crime and impact on the victims

It is axiomatic that hands-on sexual abuse inflicts upon its victim enormous, devastating, and long-lasting harm. That the abuse is inflicted on a child adds a devastating dimension to the harm ordinarily inflicted on rape victims. As the Supreme Court explained while addressing an Eight Amendment challenge to capital punishment for the rape of a child by her stepfather in *Kennedy v. Louisiana*:

> […] the victim's fright, the sense of betrayal, and the nature of her injuries caused more prolonged physical and mental suffering than, say, a sudden killing by an unseen assassin. The attack was not just on her but on her childhood…. Rape has a permanent psychological, emotional, and sometimes physical impact on the child. We cannot dismiss the years of long anguish that must be endured by the victim of child rape.

554 U.S. at 435 (citing various studies). Those years of anguish can include sudden school failure, unprovoked crying, dissociation, depression, insomnia, sleep disturbances, nightmares, feelings of guilt and inferiority, and self-destructive behavior, including an increased incidence of suicide. *Id.* at 468 ((Alito J., joined by Roberts, C.J., Scalia, and Thomas, JJ., dissenting).

Mitchell's graphic child sexual abuse imagery collection victimized countless children. He consumed media depicting child sex abuse with no regard to the broken lives depicted in the images and videos that he so willingly shared. As the Supreme Court has recognized, "[t]he distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children …. [T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation…" *New York v. Ferber*, 458 U.S. 747,

758–59 nn. 9–10 (citations omitted). A guidelines sentence is necessary to recognize the victims harmed by the defendant's conduct and to restore public confidence in our laws protecting children.

### D. Promoting respect for the law

This Court's sentence must reflect the need to "promote respect for the law." 18 U.S.C. § 3353(a)(2)(A). When Congress passed the Protection of Children against Sexual Exploitation Act of 1977, it sought to address the organized, nationwide child pornography industry that was generating millions of dollars through the exploitation of children. S. REP. 95-438, 5, 1978 U.S.C.C.A.N. 40, 42-43. The Act was aimed at filling a void in federal law by targeting the production of materials depicting child abuse. S. REP. 95-438, 5, 1978 U.S.C.C.A.N. at 56. But the Act, and its later amendments, are more than prophylactic measures. They reflect value judgments and accepted moral norms of our society. As one Senate Judiciary Committee report concluded: "the use of children…as the subjects of pornographic materials is very harmful to both the children and the society as a whole," describing the conduct as "outrageous." S. REP. 95-438, 5, 1978 U.S.C.C.A.N. at 43. Indeed, child sexual abuse "is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional and sexual development in ways which no just or humane society can tolerate." *See Kennedy v. Louisiana*, 554 U.S. 407, 468 ((Alito J., joined by Roberts, C.J., Scalia, and Thomas, JJ., dissenting) (quoting C. Bagley & K. King, Child Sexual Abuse: The Search for Healing 2 (1990)). Mitchell's actions violated federal law, but they also transgressed accepted social norms that undergird our laws.

His conduct was unnatural, morally repugnant, and incompatible with a well-ordered society. This Court's sentence must express an appropriate level of social condemnation of his crime.

### E. The need for a just punishment

"Retribution is a valid penological goal." *Glossip v. Gross*, 135 S. Ct. 2726, 2769 (2015) (Scalia, J. concurring). As the Eleventh Circuit explained in *U.S. v. Irey,* 612 F.3d 1160, 1206 (11th Cir. 2010): "the greater the harm the more serious the crime, and the longer the sentence should be for the punishment to fit the crime." 612 F.3d at 1206. Punishment is the way in which society expresses denunciation of wrongdoing, and it is thus essential that this Court promote and maintain respect for the law by pronouncing sentences that fully reflect society's revulsion. *See Gregg v. Georgia*, 428 U.S. 153, 184 n. 30 (1976) (citing Royal Commission on Capital Punishment, Minutes of Evidence, Dec. 1, 1949, p. 207 (1950)). In the same vein, Congress has expounded that the "just deserts" concept in sentencing is a means of reflecting the "gravity of the defendant's conduct," as well as the "harm done or threatened by the offense." S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59. "Child sex crimes are among the most egregious and despicable of societal and criminal offenses…" *U.S. v. Sarras*, 575 F.3d 119, 1220 (11th Cir. 2009) (discussing how courts have upheld lengthy sentences in cases involving child sex crimes as substantively reasonable). Here, the seriousness of the crimes, taken with the need for just punishment and the goal of promoting respect for the law, weigh heavily in favor of a high-end guidelines sentence.

11

### F. Adequate deterrence and the need to protect the public

Deterrence is especially important for crimes involving the sexual abuse of children, including child pornography. *See United States v. Goldberg*, 491 F.3d 668 (7th Cir. 2007). "Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor." *See id*.

The Supreme Court has noted "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class..." *Smith v. Doe*, 538 U.S. 84, 103 (2003). Mitchell fits well-within that class. As this Circuit recognized in *Irey*, research in this field is "consistent with what judicial decisions show: pedophiles who have sexually abused children are a threat to continue doing so, and age does not remove the threat." 612 F.3d at 1214 (citing various studies and reports); *see also Pugh*, 515 F.3d 1179, 1201 (11th Cir. 2008) ("sex offenders have appalling rates of recidivism and their crimes are under-reported."); *United States v. Allison*, 447 F.3d 402, 405–06 (5th Cir. 2006) ("Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders.").

This Court should also impose a guidelines sentence to send a strong warning to other individuals currently involved in or considering similar conduct. *See Irey, 612 F.3d at 120*8 ("There is another aspect of the compounding harm that the production and distribution of child pornography inflicts. It may incite or encourage others to sexually abuse children."). A guidelines sentence is necessary to convey that the

12

federal Court system finds this conduct unconscionable and will impose heavy penalties to protect the most vulnerable amongst us.

### IV. **Conclusion**

This Court should sentence Mitchell to a 960-month guidelines sentence of imprisonment. Nothing in the offense conduct or the defendant's history and characteristics warrants a downward departure or variance. A guidelines sentence is the only reasonable sentence because it is the only sentence that reflects the seriousness of the defendant's crimes and relevant conduct, provides just punishment, fully protects children in the community, and promotes respect for the law.

    Respectfully submitted,

    ROGER B. HANDBERG
    United States Attorney

    By: */s/ Ilyssa M. Spergel*
    Ilyssa M. Spergel
    Assistant United States Attorney
    Florida Bar No. 0102856
    400 N. Tampa Street, Suite 3200
    Tampa, Florida 33602
    Telephone:  (813) 274-6300
    Facsimile:  (813) 274-6178
    E-mail: ilyssa.spergel@usdoj.gov

**U.S. v. DAVID JACOB MITCHELL**         **Case No. 8:22-cr-168-MSS-SPF**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 10, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

<u>*/s/ Ilyssa M. Spergel*</u>
Ilyssa M. Spergel
Assistant United States Attorney
Florida Bar No.
400 N. Tampa Street, Ste. 3200
Tampa, FL 33602
Phone: (813) 274-6000
Fax: (813) 274-6103
Email: ilyssa.spergel@usdoj.gov